UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH STREEPY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-2435-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13 & 14. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I.     Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since January 15, 2009. Administrative Record ("AR") 186-92. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 105-10, 112-18. A hearing was subsequently held before administrative law judge ("ALJ") Sara A. Gillis. *Id.* at 36-61.

/////

/////

On November 25, 2016, the ALJ issued a decision finding that plaintiff was not disabled under 216(i) and 223(d) of the Act.[1] *Id.* at 20-30. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 15, 2009 through his date last insured of June 30, 2016 (20 CFR 404.1571 *et seq.*).

\* \* \*

3. Through the date last insured, the claimant had the following severe impairments: post concussive syndrome, peripheral neuropathy, mild left knee osteoarthritis, degenerative disc disease of the lumbar and cervical spine, and Achilles tendinitis status post

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

| | |
|---|---|
| 1 | debridement (20 CFR 404.1520(c)). |
| 2 | * * * |
| 3 | |
| 4 | 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). |
| 5 | * * * |
| 6 | |
| 7 | 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs. He can occasionally balance and crawl. He must avoid working at heights and dangerous machinery. |
| 10 | * * * |
| 11 | 6. Through the date last insured, the claimant was capable of performing past relevant work as an insurance agent. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). |
| 13 | * * * |
| 14 | 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 15, 2009, the alleged onset date, through June 30, 2016, the date last insured (20 CFR 404.1520(f)). |

*Id.* at 22-30.

Although the ALJ determined that plaintiff was not disabled at the fourth step of the sequential evaluation, she found, alternatively, that plaintiff was disabled even if he could not perform his past relevant work. Specifically, the ALJ found that in considering plaintiff age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that plaintiff can perform. *Id*. at 29.

Plaintiff's request for Appeals Council review was denied on September 19, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5.

II.  Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

3

*Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>Analysis</u>

Plaintiff's motion advances two arguments. First, plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Second, he argues that the ALJ was required to find him disabled under the Medical-Vocational Guidelines.[2] ECF No. 13 at 13-24. As discussed below, neither argument has merit.

A. <u>ALJ's RFC Determination</u>

Plaintiff contends that the ALJ erred in assessing his RFC by failing to (1) properly consider evidence regarding his ability to ambulate and (2) the impact his mental impairments have on his ability to work. *Id.* at 14-16, 20-23.

In between the third and fourth step of the sequential evaluation, the ALJ must assess the claimant's RFC. 20 C.F.R. 404.1520(a)(4). The RFC is the maximum a claimant can perform despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ is required to consider all relevant evidence, including plaintiff's testimony and opinions

---
[2] Plaintiff's arguments are not addressed in the order presented in his motion, but have been reorganized to align with the sequential evaluation.

from medical sources. SSR 96-8p; *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). An ALJ's RFC assessment need only include limitations that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 1. Evidence Concerning Ataxia

Plaintiff argues that his medical records show that he has difficulty ambulating, and therefore is unable to perform the walking demands of light work. ECF No. 13 at 14-15; *see* 20 C.F.R. § 404.1567(b) (providing that light work "requires a good deal of walking or standing . . . ."). In advancing this argument, he points to medical records from February 2014, as well as an internal medical evaluation completed by examining physician Dr. Richard Chun. ECF No. 13 at 14-15 (citing AR 404-07, 471, 690-95).

The records cited by plaintiff show that he presented at the emergency room with difficulty balancing and walking. *Id*. 404-07, 471. As observed by the ALJ, those records also show that plaintiff's symptoms started shortly after he was prescribed Lexapro, Wellbutrin, and Naltrexone. *Id*. 26, 472. Those medications were discounted a few days later and plaintiff's ataxia resolved. *Id*. at 600. Thus, these records do not establish ongoing symptoms of ataxia.

Dr. Richard Chun's internal evaluation also fails to support plaintiff's position. In his report, Dr. Chun noted that plaintiff appeared "to have some balance issues when walking, slightly broad based." *Id*. at 693. However, he also stated that plaintiff walked without difficulty, did not require an assistive devise, and his gait was tandem. *Id*. at 692-93. More significantly, Dr. Chun opined that plaintiff was able to walk and stand for up to six hours in an eight-hour workday notwithstanding his balance issues. *Id*. at 695. Accordingly, Dr. Chun's evaluation actually supports the ALJ's RFC determination. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (an examining physician's opinion based on independent clinical findings constitutes substantial evidence).

Plaintiff further argues that his inability to ambulate properly is supported by his wife's statements which, accordingly to plaintiff, the ALJ rejected without sufficient justification. ECF No. 13 at 15. An ALJ must consider lay witness testimony in determining whether a claimant can work. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Smolen*, 80 F.3d

at 1288.  However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate weight it should be given in the light of the other evidence.  To discount the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness."  *Stout*, 454 F.3d at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009).

With respect to plaintiff's ability to ambulate, his wife, Jeanette Streepy, reported that plaintiff experiences leg tremors, constant fatigue, unsteady balance, reduced strength and mobility, and difficulty walking.  *Id*. at 246-48, 251, 304, 309.  She also stated plaintiff requires a leg brace when experiencing leg weakness, and he is unable to perform yard work due to risk of falling.  *Id*. at 249, 252.

Contrary to plaintiff's contention, the ALJ consider these statements and provided legally sufficient reasons for discounting them.  The ALJ specifically found that Ms. Streepy's statements were inconsistent with the medical evidence of record, which showed that plaintiff's ataxia resolved after some of his medication were discontinued.  *Id*; *see Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").  The ALJ further found that Ms. Streepy's statements were not persuasive for the same reasons that plaintiff's allegations, which were substantially similar, were not credited.  AR 28; see *Valentine*, 574 F.3d at 694 (9th Cir. 2009) (where the ALJ provides clear and convincing reasons for rejecting subjective complaints of plaintiff and third-party testimony mirrors plaintiff's, germane reasons are given for rejecting third party evidence).[3]

---

[3] Plaintiff does not specifically challenge the ALJ's finding that his subjective complaints were not credible.  However, he does note in passing that an ALJ is required to address a claimant's testimony and may not reject subjective complaints without providing clear and convincing reasons.  ECF No. 13 at 22-33.  But plaintiff does not explicitly argue that the ALJ failed to satisfy that standard in discounting his subjective complaints, nor does he challenge any of the ALJ's stated reasons for rejecting his testimony.  *See* AR 27.  Accordingly, he has waived any challenge to the ALJ's adverse credibility determination.  *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (argument not raised in the district court are waived); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 (9th Cir. 2001) (finding that the appellant's failure to develop his argument rendered it incapable of assessment by the court); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address whether the ALJ properly rejected claims of memory problems because the plaintiff "failed to argue this issue with any specificity in his briefing.").

|   |   |
|---|---|
| 1 | Accordingly, plaintiff has not demonstrated that the ALJ erred in finding he could perform |
| 2 | the walking demands of light work. |

## 2. Mental Limitations

Plaintiff also argues that the ALJ erred in assessing the limitations imposed by his mental impairments. He argues that the medical records show that he was hospitalized once in 2013, and that subsequent records reflect poor cognition, constricted concentration, deep depression, and anxiety. ECF No. 13 at 21-22.

The ALJ, however, considered the evidence cited by plaintiff. In relation to her step-two determination, the ALJ noted plaintiff's involuntary hospitalized in November 2013 for depression and alcohol dependency. AR 23, 345-351. She further observed that plaintiff:

> completed rehabilitation and was referred to psychology in December 2013. In February, he reported anxiety and depression were improving and he was feeling great. Anxiety was noted to be asymptomatic and he was doing well in alcoholics anonymous. In June 2014, he denied feeling down or depressed; his memory was normal and he presented with appropriate mood and affect. His major depressive disorder was noted to be in partial remission in June 2014 and he then relapsed in October 2014 and again stopped drinking. When he stopped drinking alcohol, he reported he was sleeping better and his energy had improved. He denied any depression or anxiety in August 2015.

AR 23 (citations omitted).

Thus, the ALJ fully considered plaintiff's hospitalization, but found that plaintiff's mental impairments were properly managed subsequent to his discharge. *Id*; *see* AR 598-600 (February 2014 treatment note stating plaintiff is no longer taking psychiatric medication, anxiety is asymptomatic, depression is improved, and plaintiff reported "feeling great").

In finding that plaintiff's mental impairments were not severe, the ALJ also relied on the opinion of examining psychologist Dr. David Richwerger. AR 668-75. Based on his psychological evaluation of plaintiff, Dr. Richwerger opined that plaintiff was only mildly impaired in completing a normal workday or workweek without interruption from a psychiatric condition. AR 24, 674-74. No other limitations were assessed. Accordingly, the ALJ's finding that plaintiff's mental impairments cause no more than a minimal limitation on his ability to work is supported by substantial evidence. *Orn*, 495 F.3d at 632.

Plaintiff further argues that the ALJ erred by failing to discuss evidence concerning his mental impairments in conjunction with her RFC determination. ECF No. 13 at 20-21. It is true that an ALJ must consider the effect of all impairments, both severe and non-severe, in assessing a claimant's RFC. *See* 20 CFR § 404.1523. But there is no indication that the ALJ failed to include plaintiff's mental limitations in determining that plaintiff can perform light work. Although plaintiff disagrees with the ALJ's weighing of the evidence, he has not shown that the ALJ made a legal error or that the RFC finding was not supported by substantial evidence.

Lastly, plaintiff appears to contend that the ALJ should have further developed the record concerning his mental impairments. ECF No. 13 at 22-24. But plaintiff has not shown, much less argued, that the evidence is ambiguous or the record is inadequate. *See Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

B. <u>Medical-Vocational Guidelines</u>

Plaintiff also argues that the ALJ was required to find him disabled under the Medical-Vocational Guidelines (the "Grids"). The Grids, however, are used at step-five to determine whether other work exists that the claimant can perform. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). Here, the ALJ found that plaintiff was able to perform his past relevant work at step four, and therefore he was not required to apply the grids. *See Fasick v. Colvin*, 2013 WL 2445207, at *8 n.9 (C.D. Cal. June 5, 2013) ("[T]he ALJ properly found at step four that Plaintiff was capable of performing her past relevant work; thus, the Grids, which are used at step five, did not apply."); *Bottjer v. Astrue*, 2009 WL 212407, at *9 (E.D. Wash. Jan. 29, 2009) ("Because Plaintiff did not meet her burden at step four, the ALJ properly found her not disabled; he was not obliged to continue to step five, and there was no need to apply the Grids."); *Hansen v. Astrue*, 2012 WL 1032533, at *7 n.3 (D. Id. Mar. 27, 2012) (same).

Lastly, plaintiff appears to argue that the ALJ improperly concluded that he can perform his past relevant work as an insurance agent. ECF No. 13 at 17. Plaintiff notes that he last worked as an insurance agent in 2009, and that he no longer has the license required to be an

insurance agent. *Id*. He also asserts that the insurance industry has made significant changes since he last maintained his license. *Id*. Based on these contentions, plaintiff concludes that working as an insurance agent would "require more than a little vocation adjustment." *Id*.

For plaintiff to satisfy his burden at step-four, he must establish "that [he] suffers a severe impairment *that prevent* [him] from doing past work." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). There is no indication that plaintiff's insurance license lapsed due to his physical or mental impairments. Thus, plaintiff has not demonstrated that a medical impairment prevents him from taking the necessary steps to reactive his insurance license to allow him to work again as an insurance agent. *See Ray v. Bowen*, 813 F.2d 914, 917 (9th Cir. 1987) (holding that plaintiff could return to prior relevant work as a CPA despite lack of current license because "atrophy of skills does not prevent one from performing past work for disability purposes."); *Whitney v. Berryhill*, 2017 WL 1356034, at *5 (E.D. Cal. Feb. 24, 2017) (finding that the ALJ properly determined claimant to perform past relevant work as a bus driver because she could take "affirmative steps to reactive her [driver's] license.").

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 28, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9